M. A. GARROTT, ET AL. *v.* WM. A. LACEY'S EXR., ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—671, 683.]

**Conveyance to Defraud Creditors.**

　　Actual fraud is a matter of intention, but like any other fact must be proved; and a conveyance, by a failing debtor, of his real estate to one who pays its fair value, the money being used to pay the grantor's creditors, or a part of them, will not be set aside as a fraudulent conveyance. The fact that the failing debtor preferred some of his creditors to others is not a fraud and will not vitiate the sale.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

March 4, 1886.

OPINION BY JUDGE HOLT:

The appellants, J. M. Clark and M. A. Garrott, seek to reverse a judgment setting aside the sale and conveyance by the latter to the former of a tract of one hundred eighty-seven and one-half acres of land on June 11, 1881, as fraudulent, while the appellees, McCarroll, as guardian, and the Champion Machine Co. seek by a cross-appeal to subject money in the hands of J. M. Clark, which

they claim was realized upon policies of insurance taken out upon the life of C. G. Shanklin, who was the principal in their debts, to indemnify the appellants, Clark and Garrott, as his sureties. He committed suicide in March, 1881. Both of the appellants were to some extent liable as his sureties, but Garrott the most so, and to such an extent as, with his individual debts, to hopelessly insolve him.

His creditors began suing him prior to his conveyance which is now assailed; and the appellees rely upon the following facts as evidencing the fraud. The appellants are brothers-in-law; they lived near each other, and consulted as to their liability for Shanklin, who was also a brother-in-law; Garrott was largely indebted as security and otherwise, and his creditors were pressing for payment; the deed was acknowledged on June 11, 1881, but not lodged for record until the 8th of August following, which was but two days before the appellees could have had executions upon their judgments; the conveyance disposed of all his property which could have been thus reached; he has since lived upon the land, but there is testimony showing that his son, who also lived there, rents it of the vendee; the latter did not need it for his own use, while Gerrott was a farmer and it was his home place; and the appellant, Clark, does not testify as to the transaction. The latter fact is perhaps attributable to the circumstances that the appellees in endeavoring to make out a case took the deposition of Garrott, and indeed all the material testimony in the case, and the appellant, Clark, had the right if he chose to do so to stand upon their testimony.

Actual fraud is a matter of intention depending usually for proof of its existence upon circumstances; but yet like any other fact it must be proved. Under the circumstances of this case if there was no fraud upon Garrott's part there could have been none upon the part of the vendee, Clark. If a fraudulent purpose be executed upon the part of the vendor, and the vendee paid the recited consideration, yet if he did so with a fraudulent intent or with knowledge of a fraudulent intent upon the part of Garrott or under circumstances which in reason gave him notice of such intent, then the conveyance can not be upheld. The deed recites a cash consideration of $5,500, which appears to have been about the value of the farm. It is shown, however, that the entire con-

sideration was not then paid. The most of it was; but the vendee then undertook to pay for the vendor two replevin bonds, executed by the latter, and which he did pay in July, 1881, for over $1,500, and a note was given for a small portion of the purchase-money.

The judgment on the replevin bonds is proved beyond doubt; and Garrott testifies that the entire $5,500 was paid to him by Clark, and he tells what he did with the money. He says he made the sale to raise money to pay debts owing by him; names creditors to whom he subsequently and soon after paid nearly $5,000. Apparently and so far as the record discloses he had no other source from which he could have drawn the money. The appellants took the depositions of some of the creditors to whom as he testified he had made payments, and each of them confirmed his statement. This circumstance is utterly irreconcilable with the claim that fraud existed upon Garrott's part and that the money was not paid. He testifies that he used some of it for the support of his family and some of it in raising his crop in 1881, but that the greater portion of it was used in paying his debts and in the latter statement he is sustained by unquestioned testimony. The circumstances relied upon by appellants and to which we have referred are suggestive of fraud, but they do not prove it; and after a careful examination and consideration of the records we are unable to reconcile its existence with the payment of the purchase-money by Clark to Garrott and the payment of it in the main to his creditors.

There is little doubt but what in the payment he preferred some creditors over others; but this was but a preference or constructively fraudulent, and not a fraud, and can not vitiate the sale to Clark, who appears to have been financially able to make the purchase. It is urged, however, that if Clark did pay the money he did so with insurance money obtained upon the policies upon Shanklin's life, which it is alleged were in fact taken out to secure J. M. Clark and Garrott in their liability for him as sureties; that Shanklin's creditors were really entitled to this money, and that it was held in trust by J. M. Clark and Garrott as indemnity. If this were so, yet it is shown by the agreed facts that J. M. Clark has already paid as the security of Shanklin over $5,100, and that judgments have been rendered against him for over $3,000 more which he may have to pay, or between $8,000 and $9,000 in all.

The insurance money was obtained upon three policies. One of them was taken out in the name of J. M. Clark and Garott for $2,000, and they received the money; and the other two were in the names of R. S. Clark, a brother of J. M. Clark, and a brother-in-law of Shanklin, and upon them were realized $3,965 and $2,454.80, respectively, the total sum obtained upon the three policies being $8,419.80. Now admitting that all of it was for the benefit of Shanklin's securities, and that J. M. Clark in such character received it, yet a court of equity would not compel him to turn the money over until it has finally ascertained that as surety he would not have that much to pay, and then only an excess remaining in his hands.

But the testimony shows that without contradiction two of the policies were in the name of R. S. Clark, and that about two months before Shanklin killed himself he delivered them in a sealed envelope to R. S. Clark, which also contained a written request for memorandum by Shanklin that they were for the benefit of his wife and children. It is true it appears that R. S. Clark after obtaining the money on them paid it to J. M. Clark, but he testifies he did so for the benefit of Mrs. Shanklin and her children, J. M. Clark being her brother. The 31st section of "An act for the incorporation and regulation of life insurance companies," approved March 12, 1870 (1 Acts, 1869-70, p. 61), provides: "A policy of insurance on the life of any person, duly assigned, transferred or made payable to any married woman or to any person in trust for her or for her benefit, whether such transfer be made by her husband or other person, shall inure to her separate use and benefit, and that of her children, independently of her husband or his creditors, or of the person effecting or transferring the same, or his creditors."

If, however, the appellee's theory be correct, that all the insurance money was by agreement between the parties for the indemnity of J. M. Clark and Garrott, yet as this record stands and in view of what J. M. Clark has paid and may have to pay it would not have been proper for the lower court to have forced out of his hands any of the insurance money. We do not mean to now decide that when the question is properly presented and at the proper time, and upon a state of facts which possibly may be shown, J. M. Clark may not be liable to the creditors of Shanklin

to some extent by reason of receiving the insurance, or whether the proceeds of the two policies which were in the name of R. M. Clark belonging to Shanklin's wife and children are held by J. M. Clark as indemnity for his suretyship; but only that as the question is now presented by this record the appellants in the cross-appeal are not entitled to any relief.  The judgment annulling the conveyance from Garrott to J. M. Clark of June 11, 1881, so much of it as in question by the original appeal is *reversed* and so much of it as is in question upon the cross-appeal is *affirmed,* and cause remanded for further proceedings consistent with this opinion.

*Leland & Wood, C. H. Bush, for appellants.*
*Petree & Littrell, Winfree and McCarroll, for appellees.*