## Central Life Insurance Company v. Roberts.

(Decided June 9, 1915.)

### Appeal from Fayette Circuit Court.

1. Insurance—Contract For—Delivery of Policy—Waiver.—Where the owner of a newspaper contracts with a life insurance company for insurance on his life, the first premium to be paid for by advertising, and thereafter signs a formal written application wherein it is provided that no contract of insurance shall be deemed made until the policy be issued and delivered while the applicant was in good health, and it appears that the application was not the whole contract between the parties, if the company, after the approval of the physical examination and before the delivery of the policy, directs the advertising matter inserted under the terms of the contract, it will be deemed to have waived the provision in the application providing for delivery before the contract shall be effective.

2. Insurance—Contract for—Election.—Such action by the company will be considered as an election by it to treat the contract as closed and the insurance as being in effect.

3. Insurance—Contract.—A waiver is the voluntary relinquishment of a right which one might enforce if he chose, or such conduct as warrants an inference of the relinquishment of such right.

4.  Insurance—Contract for—Election by Company to Treat Effective—Estoppel.—The company elected to treat the contract of insurance as already effective by requesting the applicant to insert the advertisement before the delivery of the policy, and Roberts was thereby caused to believe that the company considered the contract of insurance as being in effect, and so was induced to insert the advertisement under the terms of the contract, and make such entries on his books as showed he was acting under the contract, thereby precluding himself from thereafter refusing to accept a policy which otherwise he would have had a right to do. This change of position by Roberts, induced by the conduct of the company, operated as an estoppel.

BAILEY D. BERRY and KOHN, BINGHAM, SLOSS & SPINDLE for appellant.

ALLEN & DUNCAN for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Prior to the 7th of February, 1913, the vice president of appellant company and Samuel J. Roberts reached an oral agreement by which that company was to issue a policy of insurance upon his life for $5,000, payable to Roberts' wife, appellee, Anna T. Roberts.

As a part of the agreement the company was to take within one year advertising in the Lexington Leader, a daily newspaper published there, and owned exclusively by Roberts, at agreed rates, to the amount of $190.00, half of which was to be paid for in cash by the company as the advertising was inserted, and the other half to be applied on the first premium.

Under this agreement Roberts, on February 7th, 1913, signed a written application for insurance, which contained, among other things, the following stipulation, to-wit:

"No contract of insurance shall be deemed made and no liability on the part of said company shall arise until a policy shall be issued and delivered to me, and the first premium thereunder actually paid, all while I am in good health."

On February 12th, 1913, Roberts was examined by the local physician of the company at Lexington, and his examination approved and immediately forwarded to the general offices of the company at Louisville, where, on the next day, February 13th, the same was approved by the medical director of the company.

On the same day that his application was so finally approved the company, through the private secretary of the president thereof, wrote to the Lexington Leader as follows:

"I am enclosing herewith copy for an advertisement which you are to run for this company. Cuts for this ad. will be furnished you by the Lexington Herald."

In accordance with this order from the company, Roberts, on the 16th day of February, had inserted in his paper the advertisement as requested, and, under his direction, there was entered upon the books of the Lexington Leader the charges of this advertisement showing that the same was to be paid for, half in cash and the other half to be credited upon the premium due appellant company on his life insurance.

On the 19th day of February the policy was issued by the company, and on the 21st day of February it was mailed to the vice president at Lexington with directions to deliver it to Roberts and take his receipt therefor. The vice president, however, was not at Lexington when it reached there, and did not actually receive the policy until the 25th, when he returned. On the 25th or 26th he attempted to deliver the policy to Roberts, but he was informed at his (Roberts') office that he was out of the city, and he again attempted more than once to deliver the policy along about the 4th, 5th or 6th of March at Roberts' place of business, when he was informed that Roberts was at home sick.

In the issue of the Lexington Leader on the 4th of March, 1913, there was again inserted an advertisement of appellant company under the terms of this contract.

On the night of the 22nd of February Roberts had a chiropodist to do some work upon his feet, and on the morning of the 23rd of February, he and his wife left Lexington for a visit to Canton, Ohio; while in Canton, on the 24th, or 25th, Roberts complained that his foot hurt him, but nothing was done for it so far as the record discloses. He and his wife reached Lexington on their return about one o'clock A. M. on March 1st, which was Saturday. On that day he went to his office early in the morning and remained there continuously all day and all night up to about five o'clock on Sunday morning, March 2nd, in getting out the Sunday edition of his paper. On the afternoon of March 2nd he had some sort of slight operation performed upon his toe, which had

given him trouble, went home, and was never at his office again; blood poison developed, and he died on the 23rd day of March, the policy of insurance never having been actually delivered to him, but having been returned by the vice president to the company about the 22nd of March, after receiving information of the serious illness of Roberts.

This is an action by the beneficiary seeking a delivery of the policy and a recovery thereon. The defense of the company is that no contract of insurance ever became effective, while the plaintiff seeks to avoid the provision quoted in the application upon the ground that the company had waived by its conduct the right to rely upon that stipulation in the application, and had by its said conduct estopped itself to rely thereon.

Whether the company waived the right to rely upon the provision in the written application, or whether it is estopped to rely upon the same, must be determined from the conduct of the parties subsequent to the signing of the written application by Roberts. It is not denied that there was a parol agreement prior to that time, the claim of the company being that it was always subject to the provisions of the written application; while for the appellee it is urged that there was nothing left undone to complete the contract, after the examination was had and approved, except the physical delivery of the policy, and that that requirement had been waived by the election of the company to treat the contract as closed and already effective; and that the company by its conduct in inducing Roberts to place himself in such position that he could not refuse to accept the policy when tendered to him, had estopped itself to deny there was a contract.

In the light of the uncontradicted evidence that the parties had an agreement, that the written application had been made, that the physical examination had been favorably acted upon, there can be no doubt that the letter of the company, dated the 13th of February, wherein it directed the insertion of "an advertisement which you are to run for this company" had reference to an existing agreement between the parties which involved the insertion of the advertisement. In the light of the evidence the direction in the letter to insert "an advertisement which you are to run for this company" can mean nothing more nor less than that "certain propositions

are now pending between you and this company by the terms of which the company is entitled to insert certain advertisements in your paper, and the company here and now elects to and does accept your proposition and directs you, under the terms of that proposition, to insert the advertisement.'' No other possible effect can be given to that letter than an acceptance of the proposals that were pending between the parties and an election upon its part to treat the contract between them as closed, and particularly so when this letter was written on the very day that the examination of the applicant Roberts was finally passed upon by the company's physical director.

In other words, the company on that day, after the approval of the physical examination, elected to accept the benefits coming to it under the pending negotiations between it and Roberts, and thereby chose to treat the contract of insurance as already in effect. Certainly, after having chosen to accept the benefits, it will be deemed to have waived that provision in the application, inserted for its benefit, which gave it the right in the future to claim that the contract was not in effect.

It is apparent that the written application was not the whole contract between the parties; the uncontradicted evidence is, even by the president of the company himself, that the first premium was to be paid, not in cash, but by inserting in the Leader certain advertisements during the year, and that half of the cost of each advertisement as inserted was to be credited on the first premium; while under the terms of the written application, now insisted upon by appellant, ''no contract of insurance shall be deemed made  *  *  *  until a policy shall have been issued and delivered to me, and the first premium thereon actually paid.'' The contention of the appellee that the real contract was that the insurance should become effective and the contract closed as soon as the physical examination was approved, is strongly fortified by the very significant fact that immediately upon the approval of the physical director of the examination the advertisement was ordered to be inserted by the company, whereby it unmistakably elected to treat the contract as closed.

It is apparent from the uncontradicted evidence that the whole contract between the parties was not embraced in the application; still the company was entitled to the

benefit of the stipulation that the insurance was not to become effective until the actual delivery of the policy to Roberts while he was in good health, until it elected by its conduct to waive that provision and accept the benefits coming to it; and if its vice president after receiving the policy had, under instructions, been directed to order in the advertisement upon its delivery, but if when he went to make the delivery he had ascertained that Roberts was ill before the advertisement had been actually directed to be inserted, the company would then have been within its rights in declining to deliver the policy. But its action in ordering the advertisement inserted before the delivery of the policy is inconsistent with any other purpose upon its part than to waive the delivery of the policy to Roberts while in good health as a condition precedent to the insurance becoming effective. Men must be presumed to have meant and intended to bring about the ordinary consequences which their conduct naturally implies; if the company did not mean to waive this provision in the contract it had no right to demand, as it did, that the advertisement be inserted under the terms of the contract, nor to withhold the policy and at the same time accept the benefits coming to it under the agreement.

Before this action was taken by the company it had been ascertained that Roberts was a satisfactory risk, the officials of the company personally knew that his business and financial standing was good, and the only thing left to complete the contract was the actual delivery of the policy, and the company, being anxious to have the advertisement inserted promptly and to receive the benefits thereof, by its conduct elected to waive the only remaining condition necessary to close the contract. To say that after the company had taken this action and Roberts had inserted the advertisement under the terms of the agreement, that the company might thereafter, when the situation of the parties had changed, take advantage of this stipulation, would be to say, in effect, that a party could not by his conduct waive a provision inserted in a writing for his benefit.

The action of the company in directing the insertion of the advertisement, and the conduct of Roberts in inserting the same and having placed upon his books entries showing that it was done under the contract, necessarily involves a recognition upon the part of each of

them that there was a contractual relation between them, and as under the contract the company had no right to demand the advertisement until the policy was delivered the demand before the delivery necessarily constituted a waiver of that provision.

A waiver has been defined to be the voluntary relinquishment of a right which one may enforce if he chooses (Roberts v. Moss, 127 Ky., 666); or the foregoing or giving up of some advantage the party would otherwise have enjoyed; an intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. Cyc., 40-252.

The facts of this case unmistakably show a waiver within the meaning of these definitions; the company knew that Roberts' physical examination had been satisfactory, its officers personally knew his moral, social, and financial standing, and knowing these things, and further knowing that it had the right to insist upon the stipulation as to delivery, but, desiring to speedily get advantage of the advertisement which it was to get under the terms of the contract, it voluntarily and intentionally relinquished that right by directing the advertisement to be inserted before the actual delivery of the policy.

The distinction between waiver and estoppel as applied in contracts of insurance is very narrow and not clearly defined, but in this case we have, growing out of the same transaction, both a waiver and an estoppel. As we have seen, the company by its conduct voluntarily relinquished the right to rely upon the stipulation as to delivery as contained in the application, while at the same time and by the same conduct it induced Roberts to believe that it was treating the contract of insurance as already effective, whereby he, under that belief, inserted the advertisement and showed by the entries on his books that he was treating it as closed, and whereby he placed himself in such position that he could not thereafter have declined to accept the policy when tendered to him. In other words, the company by electing to treat the contract of insurance as already effective induced Roberts to take such steps as precluded him from thereafter refusing to accept the policy, a right which he had under the law. Roberts was thereby induced to change his position by the conduct of the company in so electing.

This distinction between waiver and estoppel as applied to the law of insurance has been frequently pointed out and discussed by text writers and courts.

In Kiernon v. Duchess County Mutual Life Insurance Co., 150 N. Y., 190, it is said:

"The distinction between waiver and estoppel, as applied to the law of insurance, is not in all respects clearly defined. An express waiver is in the nature of a new contract, modifying to some extent the old one. It does not require a new consideration, unless it is by inducing a change of position, for the law of waiver seems to be a technical doctrine, introduced and applied by courts for the purpose of defeating forfeitures. An estoppel forbids the assertion of the truth by one who has knowingly induced another to believe what is untrue and to act accordingly. While express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either, for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy. While the principle may not be easily classified, it is well established that if the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to abandon or not to insist upon the particular defense afterwards relied upon, a verdict or finding to that effect establishes a waiver which, if it once exists, can never be revoked."

In Cyc., Vol. 40, page 255, the matter is discussed as follows:

"While waiver belongs to the family of estoppel, and the doctrine of estoppel lies at the foundation of the law of waiver, they are nevertheless distinguishable terms. It is difficult to make a distinction between waiver and estoppel which will give to each a clear legal significance and scope, separate from and independent of the other, as they are frequently used in the cases as convertible terms, especially as applied to the law of contracts and in the avoidance of forfeitures. There are, however, several essential differences between the two doctrines.

"Waiver is the voluntary surrender of a right, estoppel is the inhibition to assert it from the mischief that

has followed. Waiver involves both knowledge and intention; and estoppel may arise where there is no intent to mislead; waiver depends upon what one himself intends to do, estoppel depends rather upon what he causes his adversary to do; waiver involves the acts and conduct of only one of the parties, estoppel involves the conduct of both. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position; an estoppel always involves this element. Estoppel results from an act which may operate to the injury of the other party; waiver may affect the opposite party beneficially. Estoppel may carry the implication of fraud, waiver does not. Estoppel may arise as between consistent remedies, for waiver by election to operate as a bar, the remedies must be inconsistent. A waiver may be created by acts, conduct, or declarations insufficient to create a technical estoppel. The most general distinction lies in the fact that the term "waiver" besides implying an intention on the part of a party to relinquish a right which is not necessarily present; estoppel refers only to the act or consequences of the act of the party against whom the waiver is sought to be enforced, regardless of the attitude assumed by the other party, whereas estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy. The distinction is more easily preserved in dealing only with express waiver, but where the waiver relied upon is constructive, or merely implied from the conduct of a party, irrespective of what his actual intention may have been, it is at least questionable if there are not present some of the elements of estoppel."

In Globe Mutual Life Insurance Co. v. Wolf, 95 U. S., 326, it was said:

"The doctrine of waiver, as asserted against insurance companies, to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were after-

wards allowed to disavow their conduct and enforce the conditions."

But it is argued for the company that the insertion by Roberts of the advertisement had no other effect than a partial payment upon the first premium, and that for that reason this case comes within the rule laid down by this court in that class of cases represented by McGregor v. Met. Life Ins. Co., 143 Ky., 488, and in Commonwealth Life Ins. Co. v. Davis, 136 Ky., 339.

But an examination of those cases will disclose that when the application was taken the premiums were paid and the agent in each instance gave to the insured a receipt which expressly provided that the acceptance of the premium did not make the insurance effective, and that no obligation was thereby incurred by the company. In those cases the insured was held to be bound by the terms of the contract, and the acceptance of the premium was held not to be a waiver of the stipulation involved because the receipt expressly so provided.

But in this case there was no payment on the premium at the time the application was made, and no receipt of any kind was given. On the contrary, it was understood that the first premium should be paid by advertisements to be inserted through the coming year. The difference in the facts and legal effect to be given to them is too apparent to demand discussion.

Under the terms of the policy the company agreed, upon receipt of proofs of death, to pay to the beneficiary $5,000 in twenty annual instalments at the periods fixed therein. The court rendered judgment for $250, with interest, from the first of April, 1913, and $250 from the first of April, 1914, and for $4,500 payable in 18 equal installments of $250 each, beginning with the first of April, 1915. It is objected by appellant that this is a judgment for money before it becomes due under the terms of the contract, and that no right of action accrues on the promise to pay money on a certain day by reason of a declaration before that day of the purpose not to pay the same. The effect of the judgment as to the 18 annual future payments is merely to direct the payment of such instalments as they may mature under the terms of the contract, and is not, in fact, a judgment for the present recovery of such sums. It is equivalent only to

a declaration that such instalments will be due at the dates fixed and that it is the duty of the company to pay them as they mature.

The judgment of the lower court was in accord with these views, and it is, therefore, affirmed.