## National Union Fire Insurance Company v. Votaw.

(Decided Feb. 2, 1934.)

(As Modified 'on Denial of Rehearing June 26, 1934.)

F. M. DRAKE and W. F. GRIGSBY for appellant.

CHAS. S. MATHERLY for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Appellant issued to appellee on February 13, 1932, a policy, by which it insured appellee's dwelling and its contents to the amount of $500 for one year from that time. On March 17, 1932, the property insured was totally destroyed by fire and, appellant refusing to pay the policy, appellee instituted this action, seeking recovery of the amount insured by the policy issued him.

The questions hereinafter discussed were presented by appropriate pleadings, and appellee recovered judgment under a peremptory instruction against appellant for the amount of the policy. Hence this appeal.

The questions here presented may perhaps be best approached by a brief statement of the facts appearing, and which are not in dispute, in that the record is made up entirely of the testimony given on behalf of the plaintiff and the stipulations.

In 1928, Mrs. Votaw bought from one Henry Isham and wife the property here in evidence. Upon her failure to meet the deferred payments contracted for thereon, her vendor instituted foreclosure proceedings, followed by a directed sale of the property, at which the Farmers' Bank at Mackville, Ky., a holder of one of the lien notes, bid in the property. Thereafter, in February, 1931, the bank entered into a contract with the appellee, Votaw, for the sale of this property to him at the price of $520 (its cost to the bank), when Votaw paid one-half of the purchase price by a down payment of $140 and an assignment of John Votaw's note to it for $120, and agreed to pay the remaining one-half on January 1, 1932.

Votaw, at the time of contracting for this property

with the bank, received from it the following writing:

"Rec. on Andrew Jack Votaw farm cash $140 and note three months for $120 with the agreement that the balance will be due January 1, 1932.

"This Feb. 11, 1931.

"This [illegible] note was made and paid by John Votaw

"Farmers Bank
"By J. N. Cull, Pres."

This writing was given him as a receipt for the money paid, and constitutes his only memorandum of his contract of purchase of the property.

It appears, as to the bank's title to the property, that after the bank bid it in, and report of the sale was made to the court in October, 1930, it suffered the matter to lay dormant until March 14, 1932, when an order was entered in the suit, directing a deed to be made to the bank, which was done, showing that the bank was only an equitable owner of the property until receiving its deed thereto three days before it was destroyed by fire.

It also appears that, Andy Votaw being unable to meet his payment of the remaining one-half, or $260, upon the purchase price of this property, contracted to be paid on January 1, 1932, a supplemental agreement was had between him and the bank, whereby the bank agreed to extend the time of payment, upon the condition that Votaw would insure the property, with a loss payable cause protecting the bank's interest therein, which he agreed to do.

Pursuant to this time extension agreement, in January, 1932, he called upon the local agent of the appellant company at Springfield, Ky., Mr. Leon Simms, and advised him that he wished to procure a policy of insurance on his property, and asked him to come out and inspect it, and was told that he would. Thereafter, upon the third trip made to secure this insurance, Mr. Votaw found Mr. McConnell, appellant's special agent, at the office with Mr. Simms, when they agreed to go out and inspect the property, which they did, and made a full examination and appraisement of it. They then told Mr. Votaw that they would insure the property if he would make some directed repairs on it. It is admitted that appellee upon this occasion explained to the

agents that the property was incumbered with a debt owing the Farmers' Bank of some $300, and that he was told by the special agent that he would insure the property for him, when repaired by him, in the amount of $400 upon the residence, $100 on its contents, and $100 on the barn. In February, when Votaw had made the directed repairs and so reported same to Simms, he filled out the insurance application for him and sent it to the special agent, McConnell, to be by him forwarded to the appellant company, inserting therein his own valuation made upon inspection of the property.

The policy was shortly thereafter issued in the amount stated, with a loss payable clause to the bank, and sent to Votaw, who at once delivered it to the bank.

Upon the bank's receipt of it, Mr. Cull, its cashier, who was handling the matter, called up Simms, appellant's agent, and "told him the status of the suit and that Votaw did not have a deed but would have one when he complied with the contract."

Simms admits having the conversation with Mr. Cull and does not deny that such exposition and explanation as to Votaw's contract was made to him upon the issuance of the policy, and that the premium then paid him was retained by appellant and the policy left outstanding in apparent full force and effect, notwithstanding its information received as to the condition of Votaw's contract rights to the insured property.

Appellant insists that the court erred in peremptorily instructing the jury to find for the plaintiff upon this evidence, and that its judgment rendered thereon is erroneous in that it is clearly shown, it contends, that appellee was not the unconditional and sole owner of the property, as required by the provisions of the policy. The policy issued provided, among other conditions, that it should be void "if any false statements are made in said application, or otherwise; * * * or if the assured shall not be the sole and unconditional owner in fee of said property." Appellant contends that, in view of these provisions of the policy, the same was void, by reason of the fact that the evidence, it insists, clearly establishes the fact that Votaw was not the unconditional and sole owner of the property, but that his claim of ownership rested entirely upon the memorandum of his contract therefor, hereinabove set out, which, even upon a most cursory examination, discloses that it is

insufficient to satisfy the requirements of the statute of frauds as an enforceable contract, in that it does not describe the property, nor does it state the price to be paid for it, and the name of its vendee, and therefore the writing, being thus deficient in the essential elements required for making the contract it purports to evidence an enforceable one, it results, it contends, that Votaw's alleged misrepresentation made in his application as to absolute ownership of the property renders the contract void.

We do not deem it necessary, however, to here discuss and dispose of appellant's argument upon this point, for the very sufficient reason that it is clearly shown and admitted by the uncontradicted evidence before us that the appellant, after being advised, through its agent, by the bank, as to what was the nature and status of Votaw's contract had with it for the purchase of the property and that it was willing to and would convey him the property under his contract with it when he paid for it, issued the policy. Therefore appellant is estopped to later insist that the appellee had no insurable interest.

As said in the case of Westchester Fire Insurance Co. v. Wilson, 220 Ky. 142, 294 S. W. 1059, 1060:

"If the contention for appellant should be sustained, under the facts appearing herein, it would be to hold that an insurance company may accept and keep the premium paid to it by an insured, and deliberately write into the policy for which the premium was paid conditions based upon facts it knows to exist, which will render the policy void from the beginning and utterly worthless to the insured. It must be remembered that in this case the agents representing appellant had full authority from it to collect and receipt for the premium, to accept the application, approve the risk, and issue and deliver the policy; in other words, the acts of the agents were the acts of the insurance company, since they had full authority to act for it."

No fraudulent misrepresentations as to condition of title or value of the property, or concealment as to incumbrances upon the same, appear, nor are they shown by appellee's uncontradicted evidence, but, on the other hand, appellant admits that Votaw said and told every-

thing necessary to disclose all the true facts to the agents when visiting and inspecting his property and placing their own valuation upon it, from which it results that appellant, having with the full knowledge of all the facts as to the title, value, and incumbrance upon the property, issued the policy and knowingly permitted it to be retained as continuing in effect, must be held to have waived the condition of absolute ownership.

The here applicable rule of waiver and resulting estoppel is well stated in the case of Boggess v. Insurance Co. of North America, 235 Ky. 529, 31 S. W. (2d) 899, 900 as follows:

> "The foundation of the doctrine of waiver is that the company by its conduct, or its authorized words, has induced the insured to believe that the insurance would not be affected by a variation from the strict letter and rigid requirements of the policy. Central Life Insurance Co. v. Roberts, 165 Ky. 305, 176 S. W. 1139; Home Insurance Co. v. Ballew, 96 S. W. 878, 29 Ky. Law Rep. 1059; Morgan v. Home Insurance Co., 216 Ky. 589, 288 S. W. 321. The reason for the rule is that it would be unjust for the company after a loss to insist upon something it had led the insured to believe it would waive."

To like effect, see Phoenix Ins. Co. v. Trustees of Beechland Grange, 7 Ky. Law Rep. 671; Phoenix Ins. Co. v. Angel, 38 S. W. 1067, 18 Ky. Law Rep. 1034; London & Lancashire Fire Ins. Co. v. Gerteisen, 106 Ky. 815, 51 S. W. 617, 21 Ky. Law Rep. 471; Westchester Fire Ins. Co. of New York v. Wilson, 220 Ky. 142, 294 S. W. 1059; American Eagle Fire Ins. Co. v. Meredith, 232 Ky. 142, 22 S. W. (2d) 571; Staples v. Continental Insurance Co. of N. Y., 223 Ky. 842, 5 S. W. (2d) 265.

To like effect is this rule stated in 14 R. C. L., sec. 346, page 1166:

> "The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it void at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition, and to execute a binding contract, rather than to have deceived the insured into think-

ing his property is insured when it is not, and to have taken his money without consideration."

The lower court held that the appellant insurance company was estopped to rely upon the invalidating title provisions of the insurance contract pleaded by it, as voiding its liability thereunder, by reason of its waiver of the policy's provisions as to title, through its issuance, or leaving of the policy as in effect when fully advised as to all the facts. It is therefore the well-settled rule of this state that, where the agent is told all about the condition of the title, and understanding this the company issues the policy, or, then becoming so advised, is content to leave it with the assured as valid and in full force, the company will then be presumed to have intended to waive the policy condition, and cannot, having accepted and retained the premium under such conditions, rely upon the invalidating clause referred to. American Eagle Fire Ins. Co. v. Meredith, 232 Ky. 142, 22 S. W. (2d) 571.

As the judgment appealed from represents in our view the application of both these rules of law and the justice of the case, as we conclude after a careful consideration of the whole record, we are of the opinion that the same should be, and it is, affirmed.