## Kentucky Home Mut. Life Ins. Co. v. Leitner et al.

May 24, 1946.

L. H. Hilton and Woodward, Dawson, Hobson & Fulton for appellant.

W. Ś. Heidenberg and Lewis C. Carroll for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

The appellees, as beneficiaries of a $5000 life insurance policy carried by their father, Andrew Leitner, in the Inter-Southern Life Insurance Company, sued appellant (hereinafter often referred to as the Company) to recover the amount of the policy after the death of the insured. In full of its liability under an agreement to reinsure the Inter-Southern policyholders, the Company pleaded it was indebted to and tendered appellees $800.83 cash (the face value of the policy less the lien and interest accumulated thereon, to which reference will later be made) and three participation certificates for $1410.21 each, representing in the aggregate the amount of the lien, which certificates shall participate pro rata in the remaining assets in the Inter-Southern after the last policy has been terminated under the reinsurance agreement. The law and the facts were submitted to the court who found in favor of the beneficiaries for the full amount asked, and the Company appeals.

On June 3, 1908, the Citizens Life Insurance Company issued a 20-year-pay life insurance policy to the insured, which became fully paid-up on June 3, 1928. The Citizens merged with the Inter-Southern in 1915, and the latter, upon a suit being brought against it by the Insurance Commissioner of Kentucky under KS 753 (now KRS 296.070) in the Franklin Circuit Court, was adjudged to be insolvent and forced into receivership in May 1932. Under a reinsurance agreement entered into

on Aug. 8, 1932, between the Insurance Commissioner of Kentucky, the receivers for the Inter-Southern and appellant, which was approved by the Judge of the Franklin Circuit Court, the appellant reinsured the policyholders of the Inter-Southern. This reinsurance agreement was twice amended; once on Mar. 16, 1935, and again on Sept. 18, 1939, and as it and the amendments thereto are quite long we will not attempt to quote them in the opinion, but will be content to give only the substance of the sections with which we are concerned.

Section 4 of the original reinsurance agreement recites that as the assets of the Inter-Southern are not sufficient to provide for the obligations assumed by appellant, the latter should place a lien of 60%, bearing 6% interest compounded annually, against each policy it reinsured. By sec. 5 appellant agreed to waive this lien in death claims, and if the assets of the Inter-Southern were not sufficient to provide the cost of such waiver, then appellant would provide therefor out of its own surplus, but "nothing herein shall obligate the Company to maintain any reserve, legal or otherwise, to insure the waiving of liens by reason of the obligations assumed by this clause." Section 28 recites that if certain admitted assets of the Inter-Southern which had an agreed value of $2,000,000 should become impaired, then the Company might increase the lien in the amount of such impairment.

Under sec. 32 the Company agreed to mail each policyholder, at his last known address, a certificate of assumption stating the amount of the lien against his policy. Section 34 recites the agreement may be amended by consent of parties thereto, with the approval of the Insurance Commissioner and the Franklin Circuit Court.

The amendment of 1935, insofar as this action is concerned, did little more than to convert appellant into a mutual company. Although it is significant that sec. 34 thereof provides: "This agreement may be further amended at any time and from time to time by the Company and the Commissioner subject to the approval of the Franklin Circuit Court."

A letter dated September 22, 1932, signed by the President of the Company, was sent to all the policy-

holders of the Inter-Southern explaining the reinsurance agreement and reciting, "Death claims are paid in full, without deduction on account of the lien." Attached to this letter was a two page pamphlet giving as a reason why policyholders should continue their policies was that death claims are paid in full. In a letter dated March 22, 1935, mailed to policyholders soon after the first amendment, attention was directed to the fact that death claims are paid in full under the amended reinsurance agreement.

The Inter-Southern owned 148,050 shares of the capital stock of the Missouri State Life Insurance Company, which was taken over by appellant at $15 per share and amounted to $2,200,750 and is reflected in sec. 28 of the reinsurance agreement as a $2,000,000 asset. The Missouri State Life became hopelessly insolvent in 1933 and this asset of the Inter-Southern practically vanished. The Company insists either it was compelled to forego the payment of death claims in full and make them subject to the lien, or else increase the lien to 90% or even 100%, which would have consumed practically all death benefits. It chose to subject death payments to the lien and after due notice to Leitner, the insured, the Company on September 18, 1939, amended the reinsurance agreement with the consent of the Insurance Commissioner and the Franklin Circuit Court, so that sec. 4 thereof made all policies in force on Aug. 8, 1932 (the date of the original reinsurance agreement), or which may thereafter be in force as paid-up insurance, subject to the lien. Section 34 of this 1939 amendment was practically the same as sec. 34 of the 1935 amendment in providing that the agreement might be further amended.

In the trial court the beneficiaries took the position that as their insured accepted the original reinsurance agreement, he became a party thereto and the Company could not amend same without his consent; and since he was not before the court, the judgment amending the agreement was void as to him. They further insisted that the letters and representations of the Company that the death payments would not be subjected to the lien estopped it from applying the lien; also, that the amendment was not supported by a consideration. They make these same contentions here.

The Company's position below, as it is here, was

that the insured having accepted the original reinsurance agreement was bound as a matter of law by each amendment thereto. Also, that Leitner, the insured, in reliance upon the Company's letters and pamphlet did not change his position to his detriment, therefore the Company was not estopped by its representations that the death payments would be free from the lien. The Company further insisted that this action is a collateral attack on the judgment of the Franklin Circuit Court.

It is stipulated that the insured was bound by the original reinsurance agreement. Since it provided for amendments thereto, he was likewise bound by the amendments, unless the Company was estopped or unless a consideration separate and distinct from the original consideration is required to support the amendment. Casteel v. Kentucky Home Life Ins. Co., 258 Ky. 304, 79 S. W. 2d 941; Kentucky Home Life Ins. Co. v. Miller, 262 Ky. 330, 90 S. W. 2d 59; Kentucky Home Life Ins. Co. v Leisman, 268 Ky. 825, 105 S. W. 2d 1046. But Leitner was not a party to the contract and his consent was not necessary in order for it to be amended. His interest was protected by the Insurance Commissioner, who was a party. Grimes v. Central Life Ins. Co., 172 Ky. 18, 188 S. W. 901; Breckinridge v. Kentucky Central Life & Accident Ins. Co., 206 Ky. 244, 267 S. W. 178. The contract was made for the benefit of all policyholders, including Leitner, and having accepted it he is bound by all the terms thereof. Leitner could not accept the parts of the contract he liked and reject other parts. Equitable Assur. Soc. v. Hall, 253 Ky. 450, 69 S. W. 2d 977. The rule in such cases is, "One who sues on a contract made for his benefit must accept the contract as it was made." Sun Indemnity Co. v. Dulaney, 264 Ky. 112, 89 S. W. 2d 307, 311.

Appellees rely upon the letters and the pamphlet calling attention to the fact that death claims would be paid in full as estopping the Company from deducting the lien under the 1939 amendment. In 19 Am. Jur. 642, sec. 42, the elements of equitable estoppel are set out and it is there said that before one party can be estopped that the other must have relied upon the actions of the first and have changed his position to his detriment. This text is amply supported by our cases, two of which are Kentucky Home Life Ins. Co. v. Kittinger, 262 Ky.

525, 90 S. W. 2d 673, 103 A. L. R. 1361; Owens v. National Life & Accident Ins. Co., 234 Ky. 788, 29 S. W. 2d 557.

The weakness in appellee's position on the question of estoppel is that they utterly fail to prove that Leitner relied upon the Company's statement and that he changed his position to his hurt. His policy was paid up before appellant reinsured the Inter-Southern policyholders, yet there is not a line of proof that Leitner would have taken the cash surrender of his policy had not the Company represented death claims would be paid in full. Furthermore, there is no proof in the record that the cash surrender value of Leitner's policy at the time of the original reinsurance agreement (which was his proportionate part of the then assets of the Inter-Southern) was larger than the $800.83 the Company tendered in this action, not to mention the participation certificates.

As Leitner's policy was fully paid up before the Inter-Southern was reinsured by appellant, the latter could derive no benefit from Leitner letting his policy remain in force rather than surrendering it for its then cash value. But Leitner by not accepting the rather small cash surrender value and letting his policy continue in force was protected in the full sum of $5,000, the face of the policy, from 1932 until 1939. As Mr. Justice Holmes pointed out in Supreme Lodge, Knights of Pythias, v. Mims, 241 U. S. 574, 36 S. Ct. 702, 60 L. Ed. 1179, L. R. A. 1916F, 919, this protection would have been of great value to Leitner's beneficiaries had he been unfortunate enough to have died within that seven year interim rather than to have lived until June 8, 1943.

Appellees rely upon such cases as Pool v. First National Bank of Princeton, 287 Ky. 684, 155 S. W. 2d 4, and McWilliams v. Northwestern Mut. Life Ins. Co., 285 Ky. 192, 147 S. W. 2d 79, that an alteration or modification of the contract to be effective must be supported by a consideration. In those cases entirely new and distinct contracts were entered into between the parties and it was held such contracts had to be supported by a consideration. It is written in 12 Am. Jur. 988, sec. 410:

"Any executory contract which is bilateral in the advantages and obligations given and assumed may at

any time after it has been made and before a breach thereof has occurred be changed or modified in one or more of its details by a new agreement also bilateral by the mutual consent of the parties without any other consideration.''

In the case at bar the original contract provided that it might be amended. This provision was well known to Leitner and it was as much a part of the contract as any other contained therein. Therefore, it was not necessary that the amendment be supported by a separate and independent consideration.

The cases of National Union Fire Ins. Co. v. Votaw, 254 Ky. 822, 72 S. W. 2d 447; Olson v. Modern Woodmen of America, 182 Iowa 1018, 164 N. W. 346, L. R. A. 1918F, 1164; and Sweet v. Modern Woodmen of America, 169 Wis. 462, 172 N. W. 143, are relied upon by appellees as preventing the Company from changing the reinsurance agreement after it was once made. The Votaw case holds that a company issuing a fire insurance policy after being advised of the condition of the title of the insured is estopped to claim after the loss that he had no insurable interest. In the Olson case it was held that the right a company reserved to amend its by-laws did not authorize it to so amend them as to be in conflict with the statutes of the State under which it was operating. The Sweet case cited with approval and followed the Olson opinion. It is apparent that none of these cases support appellees' contention that once the reinsurance agreement was entered into it could not be modified even though the original contract so provided.

From the conclusion reached we deem it unnecessary to go into a discussion of whether appellees' action is a collateral attack upon the judgment of the Franklin Circuit Court, as insisted by the Company. The judgment is reversed with directions that one be entered in conformity with this opinion.

Judgment reversed.

Judge Dawson not sitting.