HELENE N. WHITE, Circuit Judge,
dissenting.
The majority opinion concludes that KNC’s claims against Lane’s End are moot because the Amended Agreement “now expressly ratifies Lane’s End’s past conduct.” Maj. Op. at 384. I respectfully dissent.
I.
KNC brought four claims: (I) for a declaratory judgment that Lane’s End should be required to make all contracts related to the Syndicate “in the name of the LDK Syndicate” and that all monies received by Lane’s End for the Syndicate should be deposited into a segregated, interest-bearing account; (II) for an injunction prohibiting Lane’s End from commingling Syndicate funds with other funds and from making contracts related to the Syndicate in Lane’s End’s name; (III) for a declaration that Lane’s End must allocate excess Nominations to Syndicate members and give Syndicate members priority consideration in the purchase of Nominations; and (IV) for damages based on Lane’s End alleged breach of fiduciary duties in engaging in the conduct described in Counts I — III. The district court dismissed the claims and KNC appealed. During the pendency of the direct appeal, thirty-nine of the forty members of the Syndicate voted to amend the Syndicate Agreement and to ratify Lane’s End’s challenged conduct. The Amended Agreement makes its changes effective retroactive to the date of the adoption of the Original Agreement and purports to supersede that Agreement entirely. Lane’s End filed a Notice of Suggestion of Mootness based on the Amended Agreement. Without reaching the merits of KNC’s appeal, we remanded the case to the district court for a determination whether the Amended Agreement rendered KNC’s claims moot.
On remand, the district court found that KNC’s complaints regarding the sale of bonus nominations were moot because “thirty-nine of the forty Syndicate Owners ratified Lane’s End’s decisions.” Op. at 382 (citing Section 6.16(f) of the Amended Agreement). The district court did not specifically address Counts I and II. The district court rejected KNC’s argument that its claims for monetary relief in Count IV are still alive, relying on its own prior dismissal of the claim. Id. at 383 (“[T]he breach of fiduciary duty claims were expressly dismissed and therefore, there can be no ‘surviving1 claim for damages stemming from those dismissed claims.”). The *387 district court also denied KNC’s request for discovery.
In this appeal, KNC argues, first, that the district court failed to follow the mandate in the remand order, “which KNC construes to contain a requirement that the district court decide disputed issues of material fact via the discovery process.” Maj. Op. at 385. I agree with the majority that the remand order did not require the district court to permit discovery into the validity of the amendment and ratification process. I note, however, that to the extent the district court relied on its own prior dismissal of KNC’s claim for damages to find the damages claim moot, it failed to comply with the mandate. Second, KNC argues that the amendment of the Original Agreement cannot moot its claim for damages regarding Lane’s End’s alleged breach of fiduciary duties.
II.
As KNC acknowledges, its claims for declaratory and injunctive relief under the Original Agreement are moot because the Original Agreement no longer exists to enforce. But the Owners’ adoption of the Amended Agreement does not necessarily moot KNC’s claims for damages because this court can still redress a past violation of the Original Agreement by awarding damages. See Wedgewood Ltd. P’ship I v. Twp. of Liberty, 610 F.3d 340, 348 (6th Cir.2010) (“ ‘The test for mootness is whether the relief sought would, if granted, make a difference to the legal interest of the parties.’ ”) (citation omitted); see also 13C Fed. Prac. & Proc. Juris. § 3533.3 (3d ed.) (“Untold numbers of cases illustrate the rule that a claim for money damages is not moot, no matter how clear it is that the claim arises from events that have completely concluded without any prospect of recurrence.”).
Lane’s End asserts, essentially, two reasons that the Amended Agreement nonetheless renders KNC’s damages claims moot: (1) in the Amended Agreement, the Owners ratified, i.e., retroactively sanctioned, all the conduct of Lane’s End that KNC claims was in violation of the Agreement and Lane’s End’s fiduciary duties; and (2) the Amended Agreement purports to supersede the Original Agreement entirely, as though it never existed.
A. Ratification
The Original Agreement provides that “the relationship of the Owners to the Syndicate Manager [is] that of principal and agent.” Under Kentucky law, a principal may ratify or affirm its agent’s otherwise unauthorized conduct. See Stewart v. Mitchell’s Adm’x, 301 Ky. 123, 190 S.W.2d 660, 662 (1945) (“As applied to the law of agency, ratification is the affirmance of an act by one for or in behalf of another at a time when he had no authority to do the act for the one in whose name it was done.”). “An otherwise-effective ratification eliminates claims that the principal has against the agent, including claims for breach of fiduciary duty.” Restatement (Third) of Agency § 4.02(b). Accordingly, if KNC ratified Lane’s End’s conduct, all KNC’s claims against Lane’s End would be extinguished, and therefore moot, even claims for damages.
The Original Agreement provides that a vote of 34 out of 40 Owners may alter, amend, or modify the Agreement, and a simple majority of Owners may resolve “all questions properly submitted.” The Owners’ express statement in the Amended Agreement that they ratified Lane’s End’s conduct is undoubtedly effective to ratify the conduct on behalf of the Owners who participated in the vote to amend, but the question is whether it is effective with respect to KNC.
*388 The majority opinion concludes that Kentucky law permits a simple majority of syndicate owners to ratify an agent’s conduct on behalf of the remaining owners. Maj. Op. at 384 (“Kentucky law permits such ratification, even with the consent of a simple majority of the owners.”) (citing Weisbord/Etkin/Goldberg v. Gainesway Mgmt. Corp., No. 2007-CA-000280-MR, 2008 WL 820950, at * 5-6 (Ky.Ct.App. Mar. 28, 2008), for its observation that “[t]he appellants provide no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate.”). But the quoted sentence in Weisbord was not a holding; it was dicta. In Weisbord, the plaintiffs challenged the sale of one member’s Fractional Interest, arguing that in coordinating the sale, the Syndicate Manager had deviated from the terms of the Syndicate Agreement governing such sales. Id. at *2. The court affirmed the dismissal of the plaintiffs’ claims for declaratory and injunctive relief. It found, first, that the plaintiffs were estopped from challenging the sale because they themselves had sought a waiver from the terms of the Agreement. Id. at *4. Second, it addressed the plaintiffs’ argument “that the ratification was invalid because it was not approved by all the members of the syndicate, but was approved only by a majority.” Id. at *6. The court made the observation quoted above that the plaintiffs had provided “no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate.” Id. And then in a footnote immediately following that observation, the court stated: “Regardless of whether the appellants have a valid argument in this regard, they are without remedy due to estoppel as we have explained above.” Id. at *6 n. 3 (emphasis added). Thus, the observation the majority relies on would not bind subsequent Kentucky courts because it is dicta, see Bd. of Claims of Kentucky v. Banks, 31 S.W.3d 436, 439 n. 3 (Ky.Ct.App.2000), and because it appears in an unpublished decision, see Ky. St. RCP 76.28(4)(c). For a federal court sitting in diversity, like this one, the observation is a relevant data point, but is not controlling on its own. See Garden City Osteopathic Hosp. v. HBE Corp., 55 F.3d 1126, 1130 (6th Cir.1995) (“When deciding a diversity case under state law,” where the state’s highest court has not decided the question, “a federal court must ... ascertain the state law from ‘all relevant data’” including “the state’s appellate court decisions, ... the state’s supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states”) (citations omitted).
The Kentucky Supreme Court has applied the Restatement (Third) of Agency (2006) to questions of agency law, see Pannell v. Shannon, 425 S.W.3d 58, 84 (Ky.2014) (citing §§ 4.01, 4.02 in a discussion of ratification), as well as American Jurisprudence, Second Edition, on Agency, see Kindred Nursing Ctrs. Ltd. P’ship v. Leffew, 398 S.W.3d 463, 467 (Ky.Ct.App.2013) (stating that “Kentucky has adopted th[e] understanding of ratification” expressed in 2 Am.Jur.2d Agency § 209 (2013)) (citing Capurso v. Johnson, 248 S.W.2d 908, 910 (Ky.1952)). Under the Restatement, the Owners are “coprincipals,” and lack the power to ratify their agent’s conduct on each other’s behalf. See Restatement (Third) of Agency § 3.14 (“[A]n agent for coprincipals acts for more than one principal in the same transaction or other matter. Coprincipals are not hierarchically stratified.”); see also id. § 4.01 (“When *389 there are two or more coprincipals, each must ratify to be bound.”) (emphasis added). American Jurisprudence is in accord. See 3 Am.Jur.2d Agency § 176 (2013) (“If a ratification would bind multiple principals, each must affirm with knowledge of the acts to be ratified.”) (citing Restatement (Third) Agency § 4.06 cmt. b.); see also Kindred Nursing Ctrs. Ltd. P’ship, 398 S.W.3d at 467 (citing § 176 of Am.Jur. as authoritative on a question of agency law).
KNC did not vote to ratify Lane’s End’s conduct. To resolve the question whether the Owners’ ratification is effective as to KNC, I would look to the authorities the Kentucky Supreme Court and Court of Appeals have relied on in published decisions rather than an unsupported, nonbinding observation in an unpublished decision. According to those authorities, the Owners lacked authority to ratify Lane’s End’s conduct on KNC’s behalf, and therefore, the Owners’ ratification could not and did not extinguish KNC’s claims for damages.
B. Contract
I would also reject Lane’s End’s contention that the Owners’ purported retroactive amendment of the contract moots KNC’s claims for damages. Lane’s End cites Kentucky decisions holding generally that a contract provision allowing for amendment of the contract is enforceable and binding, see, e.g., Kentucky Home Mut. Life Ins. Co. v. Leitner, 302 Ky. 789, 196 S.W.2d 421, 423 (1946); Supreme Lodge K.P. v. Hunziker, 121 Ky. 33, 87 S.W. 1134, 1135 (1905), but neither party cites eases addressing whether a contract provision granting one-sided authority to amend can be reasonably construed to include authority to amend the contract retroactively.
Kentucky follows the general rule of enforcing contracts as written. See Wehr Constructors, Inc. v. Assurance Co. of Am., 384 S.W.3d 680, 685 (Ky.2012) (“ ‘[A] written instrument will be enforced strictly according to its terms,’ and a court will interpret the contract’s terms by assigning language its ordinary meaning and without resort to extrinsic evidence.”) (quoting Frear v. P.T.A. Indus., Inc., 103 S.W.3d 99, 106 (Ky.2003)). No term in the Original Agreement confers on the Owners the power to retroactively change its terms. The Original Agreement provides that it may be “altered, amended, or modified” by thirty-four out of forty Owners, but says nothing about retroactivity, and the contract does not purport to govern the parties’ past conduct. Under those circumstances, I see no basis to conclude that the Owners’ authority to amend the Original Agreement includes the additional extraordinary power to retroactively amend it to eliminate an Owner’s accrued claim for damages. Cf., e.g., Sec. Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369, 373 (6th Cir.1999) (declining to give a merger clause retroactive effect “as no other provision of the later agreement even ‘remotely intimate[d] that the parties ever contemplated so radical a retroactive renegotiation of their earlier agreements’ ”) (quoting Choice Security Sys., Inc. v. AT&T Corp., No. 97-1774, 1998 WL 153254, at *1 (1st Cir.1998) (unpublished)). To the extent that Lane’s End argues that the Amended Agreement is probative of the Owners’ understanding of the terms of the Original Agreement, that is not a contention that renders KNC’s claims moot; it is an argument on one side of a live controversy.
I would VACATE the district court’s mootness determination and reach the merits of KNC’s appeal regarding Count III. In that regard, I would reverse the grant of the motion to dismiss as to the claim regarding nominations. The Syndi *390 cate Agreement is ambiguous on this issue, and further proceedings are appropriate.