HELENE N. WHITE, Circuit Judge,
concurring and dissenting.
The majority opinion concludes that KNC’s claims against Lane’s End are moot because the Amended Agreement “now expressly prohibits the relief sought by KNC.” Maj. Op. at 487. I respectfully dissent from that determination. I would, however, affirm because I agree with the district court’s dismissal on the merits.
I.
KNC brought four claims in its amended complaint: (I) for a declaratory judgment regarding KNC’s alleged rights (a) to inspect the Syndicate’s books and records, (b) to an un-redacted purchase offer, and (c) to information regarding the advancement of Syndicate funds to one Owner, all based on the Original Agreement; (II) for a declaratory judgment regarding KNC’s alleged right to inspect the Syndicate’s books and records under the Kentucky Business Corporations Act, Ky.Rev.Stat. Ann. § 271b.l6-020; (III) for compensatory and punitive damages for Lane’s End’s alleged violations of its fiduciary duties to KNC, based on Lane’s End’s (a) refusal to provide KNC full access to the books and *490 records, (b) advancing Syndicate funds to one Owner, and (e) polling and attempting to influence the Owners to “ratify” its conduct; and (IV) for an accounting of all Syndicate funds based on Kentucky’s law of agency and the Original Agreement. The district court dismissed the claims, and KNC appealed.
While KNC’s appeal was pending, thirty-nine of the forty members of the Syndicate voted to amend the Syndicate Agreement and to ratify Lane’s End’s challenged conduct. The Amended Agreement makes its changes effective retroactive to the date of the adoption of the Original Agreement and purports to supersede that Agreement entirely. This court affirmed the dismissal of Count II and remanded the case to the district court to determine whether the Amended Agreement rendered moot KNC’s remaining claims. On remand, the district court found that a live controversy no longer exists between the parties because the Amended Agreement “now expressly bars the exact relief requested by KNC in its original suit for declaratory relief seeking a right to inspect the books and records of the Syndicate,” and because the Owners “expressly ratified Lane’s End’s actions in not providing KNC with their identities and contact information.” The district court did not separately address KNC’s claim for damages except that it rejected a new argument that KNC made, post-remand, that Lane’s End had continued to engage in conduct contrary to its fiduciary duties when it wrote the Owners and asked them to approve the Amended Agreement. The district court found that argument barred by specific language in the Amended Agreement providing that the Syndicate Manager can express its views to Owners regarding matters in issue.
In this appeal, KNC appeals only the district court’s determination that Count III, its claim for damages, is moot.[3] It argues that the district court should have granted its request for discovery into the validity of the process used to amend the Original Agreement, and that the other Owners of the Syndicate could not amend the Original Agreement without KNC’s consent, and could not “effectively and after-the-fact ratify” Lane’s End’s breach of the Original Agreement on KNC’s behalf. I agree with the majority that the district court had the discretion to deny further discovery, but I do not agree that the Amended Agreement renders KNC’s damages claim moot.
II.
As KNC apparently concedes, its claims for declaratory and injunctive relief under the Original Agreement are now moot because the Original Agreement no longer exists to enforce. See KNC Br. 6 n. 2 (stating it does not appeal the dismissal of those claims). But the Owners’ adoption of the Amended Agreement does not necessarily moot KNC’s claims for damages because this court can still redress a past violation of the Original Agreement by awarding damages. See Wedgewood Ltd. *491 P’ship I v. Twp. of Liberty, 610 F.3d 340, 348 (6th Cir.2010) (“ ‘The test for mootness is whether the relief sought would, if granted, make a difference to the legal interest of the parties.’ ”) (citation omitted); see also 13C Fed. Prac. & Pros. Juris. § 3533.3 (3d ed.) (“Untold numbers of cases illustrate the rule that a claim for money damages is not moot, no matter how clear it is that the claim arises from events that have completely concluded without any prospect of recurrence.”).
Lane’s End asserts, essentially, two reasons that the Amendment Agreement nonetheless renders KNC’s damages claims moot: (1) in the Amended Agreement, the Owners ratified, i.e. retroactively sanctioned, all the conduct of Lane’s End that KNC claims was in violation of the Agreement and Lane’s End’s fiduciary duties; and (2) the Amended Agreement purports to supersede the Original Agreement entirely, as though it never existed.
A. Ratification
The Original Agreement provides that “the relationship of the Owners to the Syndicate Manager [is] that of principal and agent.” Under Kentucky law, a principal may ratify or affirm its agent’s otherwise unauthorized conduct. See Stewart v. Mitchell’s Adm’x, 301 Ky. 123, 126, 190 S.W.2d 660 (1945) (“As applied to the law of agency, ratification is the affirmance of an act by one for or in behalf of another at a time when he had no authority to do the act for the one in whose name it was done.”). “An otherwise-effective ratification eliminates claims that the principal has against the agent, including claims for breach of fiduciary duty.” Restatement (Third) of Agency § 4.02(b). Accordingly, if KNC ratified Lane’s End’s conduct, all KNC’s claims against Lane’s End would be extinguished, and therefore moot, even claims for damages.
The Original Agreement provides that a vote of 34 out of 40 Owners may alter, amend, or modify the Agreement, and a simple majority of Owners may resolve “all questions properly submitted.” The Owners’ express statement in the Amended Agreement that they ratified Lane’s End’s conduct is undoubtedly effective to ratify the conduct on behalf of the Owners who participated in the vote to amend, but the question is whether it is effective with respect to KNC.
The majority opinion concludes that Kentucky law permits a simple majority of syndicate owners to ratify an agent’s conduct on behalf of the remaining owners. Maj. Op. at 488 (“Kentucky law permits such ratification, even with the consent of a simple majority of the owners.”) (citing Weisbord/Etkin/Goldberg v. Gainesway Mgmt. Corp., No.2007-CA-000280-MR, 2008 WL 820950, at *5-6 (Ky.Ct.App. Mar. 28, 2008), for its observation that “[t]he appellants provide no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate.”). But the quoted sentence in Weisbord was not a holding; it was dicta. In Weisbord, the plaintiffs challenged the sale of one member’s Fractional Interest, arguing that in coordinating the sale, the Syndicate Manager had deviated from the terms of the Syndicate Agreement governing such sales. Id. at *2. The court affirmed the dismissal of the plaintiffs’ claims for declaratory and injunctive relief. It found, first, that the plaintiffs were estopped from challenging the sale because they themselves had sought a waiver from the terms of the Agreement. Id. at *4. Second, it addressed the plaintiffs’ argument “that the ratification was invalid because it was not approved by all the members of the syndi *492 cate, but was approved only by a majority.” Id. at *6. The court made the observation quoted above that the plaintiffs had provided “no convincing authority in law or in the express language of the Agreement to support the view that such a post facto approval of the transfer of one share must be approved by all the members of the syndicate.” Id. And then in a footnote immediately following that observation, the court stated: “Regardless of whether the appellants have a valid argument in this regard, they are without remedy due to estoppel as we have explained above.” Id. at *6 n. 8 (emphasis added). Thus, the observation the majority relies on would not bind subsequent Kentucky courts because it is dicta, see Bd. of Claims of Kentucky v. Banks, 31 S.W.Bd 436, 439 n. 3 (Ky.Ct.App.2000), and because it appears in an unpublished decision, see Ky. St. RCP 76.28(4)(c). For a federal court sitting in diversity, like this one, the observation is a relevant data point, but is not controlling on its own. See Garden City Osteopathic Hosp. v. HBE Corp., 55 F.3d 1126, 1130 (6th Cir.1995) (“When deciding a diversity case under state law,” where the state’s highest court has not decided the question, “a federal court must ... ascertain the state law from ‘all relevant data’ ” including “the state’s appellate court decisions, ... the state’s supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states”) (citations omitted).
The Kentucky Supreme Court has applied the Restatement (Third) of Agency (2006) to questions of agency law, see Pannell v. Shannon, 425 S.W.3d 58, 84 (Ky. 2014) (citing §§ 4.01, 4.02 in a discussion of ratification), as well as American Jurisprudence, Second Edition, on Agency, see Kindred Nursing Centers Ltd. P’ship v. Leffew, 398 S.W.3d 463, 467 (Ky.Ct.App. 2013) (stating that “Kentucky has adopted th[e] understanding of ratification” expressed in 2 Am.Jur.2d Agency § 209 (2013)) (citing Capurso v. Johnson, 248 S.W.2d 908, 910 (Ky.1952)). Under the Restatement, the Owners are “coprincipals,” and lack the power to ratify their agent’s conduct on each other’s behalf. See Restatement (Third) of Agency § 3.14 (“[A]n agent for coprincipals acts for more than one principal in the same transaction or other matter. Coprincipals are not hierarchically stratified.”); see also id. § 4.01 (“When there are two or more co-principals, each must ratify to be bound.”) (emphasis added). American Jurisprudence is in accord. See 3 Am.Jur.2d Agency § 176 (2013) (“If a ratification would bind multiple principals, each must affirm with knowledge of the acts to be ratified.”) (citing Restatement (Third) Agency § 4.06 cmt. b.); see also Kindred Nursing Centers Ltd. P’ship, 398 S.W.3d at 467 (citing § 176 of Am.Jur. as authoritative on a question of agency law).
KNC did not vote to ratify Lane’s End’s conduct. To resolve the question whether the Owners’ ratification is effective as to KNC, I would look to the authorities the Kentucky Supreme Court and Court of Appeals have relied on in published decisions rather than an unsupported, nonbinding observation in an unpublished decision. According to those authorities, the Owners lacked authority to ratify Lane’s End’s conduct on KNC’s behalf, and therefore, the Owners’ ratification could not and did not extinguish KNC’s claims for damages.
B. Contract
I would also reject Lane’s End’s contention that the Owners’ purported retroactive amendment of the contract moots KNC’s claims for damages. Lane’s End cites Kentucky decisions holding generally that a contract provision allowing for amendment of the contract is enforceable *493 and binding, see, e.g., Kentucky Home Mut. Life Ins. Co. v. Leitner, 302 Ky. 789, 196 S.W.2d 421, 423 (1946); Supreme Lodge K.P. v. Hunziker, 121 Ky. 33, 87 S.W. 1134, 1135 (1905), but neither party cites cases addressing whether a contract provision granting one-sided authority to amend can be reasonably construed to include authority to amend the contract retroactively.
Kentucky follows the general rule of enforcing contracts as written. See Wehr Constructors, Inc. v. Assurance Co. of Am., 384 S.W.3d 680, 685 (Ky.2012) (“ ‘[A] written instrument will be enforced strictly according to its terms,’ and a court will interpret the contract’s terms by assigning language its ordinary meaning and without resort to extrinsic evidence.”) (quoting Frear v. P.T.A. Industries, Inc., 103 S.W.3d 99,106 (Ky.2003)). No term in the Original Agreement confers on the Owners the power to retroactively change its terms. The Original Agreement provides that it may be “altered, amended, or modified” by thirty-four out of forty Owners, but says nothing about retroactivity, and the contract does not purport to govern the parties’ past conduct. Under those circumstances, I see no basis to conclude that the Owners’ authority to amend the Original Agreement includes the additional extraordinary power to retroactively amend it to eliminate an Owner’s accrued claim for damages. Cf., e.g., Sec. Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369, 373 (6th Cir.1999) (declining to give a merger clause retroactive effect “as no other provision of the later agreement even ‘remotely intimate[d] that the parties ever contemplated so radical a retroactive renegotiation of their earlier agreements’ ”) (quoting Choice Security Sys., Inc. v. AT & T Corp., No. 97-1774, 1998 WL 153254, at *1 (1st Cir.1998) (unpublished)). To the extent that Lane’s End argues that the Amended Agreement is probative of the Owners’ understanding of the terms of the Original Agreement, that is not a contention that renders KNC’s claims moot; it is an argument on one side of a live controversy.
I would VACATE the district court’s mootness determination and reach the merits of KNC’s appeal regarding Count III. In this regard, however, I agree with the district court’s dismissal. KNC has shown no breach and no damages as relevant to the claims in this case.

. Lane’s End contends that KNC waived appeal of Count III by failing to brief it in its opening brief in the first appeal in this case, and that therefore KNC has waived appeal of all its claims. I disagree. Count III is a claim for punitive and compensatory damages based on the allegedly wrongful conduct described in Count I. In its opening brief in the first appeal, KNC stated ”[t]his Appeal relates primarily to the District Court’s dismissal of Count I” and asked this court, if it found reversal warranted on Count I, to remand for the district court for determination of the remaining counts "based upon the outcome of Count I.” Because KNC made arguments relevant to the reversal of Count III in its opening brief in the first appeal, and asked for reversal of the district court’s decision on that count, I would not find that it waived appeal of the claim.